### J. P. MENDONCA *vs.* HAUPU.

ON APPEAL FROM THE FENCE COMMISSIONERS OF WAIALUA, OAHU.

THE FOURTH SECTION of an Act to Promote Fencing (page 424 of the Civil Code), authorizes the Fence Commissioners, where in their opinion it is "inexpedient" to establish a fence between adjoining lands, etc., etc., to decide how many animals each landowner may pasture, etc.;

HELD, that the expensiveness of the fence contemplated, in comparison with the value of the land, or the poverty of one landowner, do not render the erection of the fence "inexpedient."

Opinion of the Court by McCULLY, J.

This is an application to the Fence Commissioners of the District of Waialua, by the plaintiff, Mendonca, against the defendants, praying that they may be required to join with

him in building a fence around the land in possession of the defendants, said land being conterminous with the plaintiff's. On the 8th day of December last the Fence Commissioners. aforesaid rendered a decision that the fence should be built at the expense of the plaintiff Mendonca and the defendants, said fence to be of wire, and to be built within six months from the date of the decision (8th December, 1879); that it should be five feet high, capable of turning cattle. All of which is in accordance with the second section of the "Act to Promote Fencing." See page 424 of the Civil Code.

The evidence is that the land in question is 112 chains long by 10 wide, running from the sea inland, and the plaintiff says he has had lawsuits with the defendants for the last two years, and now wishes to have the land fenced that he may live in peace. It further appears that a wire fence costs from $500 to $600 a mile, or as one of the witnesses says, from sixty-two to seventy-five cents a fathom. The plaintiff says that he estimates the value of defendants' land at $3.00 an acre. And it further appears that the plaintiff is in possession of 5,000 acres of land, which lies on both sides of defendants' land, and that since the trouble between them commenced, the plaintiff has frequently offered to the defendants to exchange land with them on favorable terms, so as to make the defendants' land more useful and more compact, and so that it could be fenced off inexpensively. But the defendants have refused to do that.

The defendants have taken this appeal from the Fence Commissioners, alleging that the building of the fence is "inexpedient" on account of the expensiveness of the fence in comparison with the value of the land, and cite Section 4 of the same Act, which reads as follows: "In all cases where in the opinion of the Commissioners it is 'inexpedient' to establish a fence between adjoining lands, either from the nature of the land, the scarcity of fencing materials, or the conflicting rights of landowners, said Commissioners shall, upon the

application of either of such owners, decide how many animals each shall be at liberty to pasture upon his land, under a penalty to be specified by the Commissioners, a certified copy of whose decision, filed with any District Justice of the District, shall, upon satisfactory proof of the violation thereof, entitle the aggrieved party to judgment and execution as in civil cases, for so much of the penalty as such Justice shall deem just."

It is argued that it would be *unjust* and *oppressive* to compel a man whose land is only worth $400 or $500, to build a fence of which his share would exceed the value of the land. But the hardship appears to us to be upon the other side. It must be apparent to any one that this long and narrow strip of land has been purchased with the design of not only enjoying it, but the adjacent land as well; and from litigation which has come from the District Court of Waialua to this Court, it is apparent that the present defendants have proposed and do now propose to enjoy the plaintiff's land as well as their own.

We apprehend that there is a mistake being made regarding what constitutes the "inexpediency" contemplated by the statute. It is not the poverty or wealth of the defendant, but it is the natural circumstances of the land and the uses to which it is to be put. It would be very inexpedient if a man had a cane-field of one thousand acres, and another man had a five-acre lot inside of it upon which he chose to keep five head of cattle, and when the owner of the cane-field applied to the Fence Commissioners to build a fence around the five acres, for which the petitioner would have to pay one-half of the expense, he should be answered that the other man is very poor, and therefore it is "inexpedient" for him to build, and he may pasture five head, and you may pasture one hundred.

It appeared in the course of this hearing and in the suits which led up to it, that the petitioner in this case had fenced in a large portion, or perhaps the whole of his 5,000 acres; and the respondents proposed in point of fact to take advantage
33

of his fences to restrain their cattle, and run as many cattle as they may see fit on his land, because they hold, say 112 acres inside this tract, or as an alternative that the Fence Commissioners decree them to run twelve horses or fifteen head of cattle on their land, and the petitioner 750 head of cattle on his 5,000 acres; and every time he transcended the 750 head to be summoned before the District Justice to answer to the penalty of the bond prescribed by the statute.  Or again, having obtained a decree of the Commissioners similar to that above set forth, and afterward the petitioner fences in a thousand acres for paddocks, the respondents in this action would sue him (the petitioner) for preventing their cattle running over the whole 5,000 acres, or compel him to reduce his proportion by one-fifth, or if he should buy say 500 acres, he would be obliged to summon these respondents to see how many more cattle he should run.  Thus the whole of Mendonca's capital and industry is to be subordinate or sacrificed to the owner of the 112 acres inside.  This would be very "inexpedient."  The fact is that the fourth section of this Act was meant to apply to the regulation of affairs between conterminous landholders who were pasturing cattle on somewhat equal or like terms, and was very applicable to the state of the country as it existed at the time of the enactment, but is now growing obsolete, and for the most part inapplicable, and in the instance before us is especially so.

It would be especially unreasonable to hold that every man who might have a kuleana of five acres inside of an ahupuaa consisting of perhaps many thousand acres, is to summon the owner of the ahupuaa and procure a decree of the District Justice that the kuleana owner should run two head on the whole tract, and the ahupuaa owner say a thousand and no more, because it is inconvenient for the kuleana holder to fence his land in, or even pay half the expense of fencing.

It appears to us that the words "adjoining lands," as used in fourth section, is used in the same sense in which the word

"lands" was used almost or quite universally during the Land Commission investigations, and means large tracts of land, such as ahupuaas—tracts of land being known by different names—and could not mean that every holder of a piece of land inside of an ahupuaa should have the means of harassing the owner of the ahupuaa in the manner brought to light by this trial.

Judgment of the Fence Commissioners affirmed.

Castle & Hatch for plaintiff.

S. B. Dole for defendants.